Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ARDOLINO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No: |
| | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MANNKIND CORPORATION, ALFRED MANN, MATTHEW PFEFFER, AND HAKAN EDSTROM, | |
| Defendants. | |

Plaintiff Eric Ardolino, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by MannKind Corporation ("MannKind" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents and press releases; and (c) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons or entities who purchased or otherwise acquired MannKind securities between August 10, 2015 and January 5, 2016, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities law and to pursue remedies under asserting claims under Sections 10(b) and 20(a) the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Defendants maintain an office in this district and a significant portion of Defendants' actions and the subsequent damages took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff Eric Ardolino purchased MannKind securities during the Class Period and has suffered damages as set forth in the accompanying certification.

7.     MannKind is a Delaware corporation headquartered at 25134 Rye Canyon Loop, Suite 300, Valencia, California 91355. During the Class Period, the Company's stock was traded on the NASDAQ Global Select Market ("NASDAQ") under the symbol "MNKD."

8.     Defendant Alfred Mann ("Mann") served as the Company's Chief Executive Officer ("CEO") from before the beginning of the Class Period until January 9, 2015 and again from November 19, 2015 to January 11, 2015.

9.     Defendant Matthew Pfeffer ("Pfeffer") served as the Company's Chief Financial Officer ("CFO") during the Class Period. Defendant Pfeffer assumed the position of CEO on January 11, 2015.

10.     Defendant Hakan Edstrom ("Edstrom") served as the Company's CEO from January 9, 2015 to November 19, 2015.

11.     Defendants Mann, Pfeffer, and Edstrom are collectively referred to hereinafter as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

- 3 -

(f)    approved or ratified these statements in violation of the federal securities laws.

13.    As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and was traded on NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

14.    MannKind is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to MannKind under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS
### Background

16.    MannKind is a biopharmaceutical company. Its main product, Afrezza, is a rapid-acting insulin indicated to improve glycemic control in adults with type 1 and type 2 diabetes. Afrezza is inhaled at mealtimes to help control insulin levels, but it is not a substitute for long-acting insulin and must be used along with long-acting insulin.

17.    Afrezza was approved by the Food and Drug Administration ("FDA") in June 2014. With the approval, however, the FDA was concerned for the use of an inhaled insulin with people who suffer from serious pulmonary disease or conditions

such as chronic pulmonary disease or asthma. Afrezza is not recommended for people who smoke. Accordingly, the FDA imposed strict guidelines for the prescribing of Afrezza and ongoing monitoring in patients including testing if a patient has a existing significant pulmonary disease. Before getting a prescription for Afrezza, a patient must provide his doctor with a detailed medical history, have a physical examination, and take a spirometry, a lung test to identify any underlying lung disease. To get a prescription, once the initial steps are taken, patients must take a 10 day sample of the drug. After that, a prescription can be written and patients must have ongoing lung functioning tests every six months.

18.    The most common doctors who treat patients with diabetes are endocrinologists and diabetologists. Although primary care doctors tend to have access to spirometer instruments, about 30% of endocrinologists and even fewer diabetologists have access to spirometers. Accordingly, many patients would have to go to multiple doctors to get this test and follow through with their diabetes treatment.

19.    On September 24, 2014, MannKind announced that it had entered in a worldwide collaboration and licensing agreement with sanofi-aventis U.S. LLC ("Sanofi"), a global healthcare company, for the development and commercialization of Afrezza (the "Agreement"). Under the Agreement, Sanofi will be responsible for the global commercialization, regulatory and development activities for Afrezza. In return, MannKind will receive an upfront payment of $150 million and potential milestone payments of up to $775 million. The milestone payments depended upon regulatory and developmental targets as well as sales thresholds. Under the Agreement, Sanofi will receive 65% of profits and MannKind will receive 35% of profits.

20.    In February 2015, the sale of Afrezza began.

- 5 -

21.     On May 8, 2015, Defendants held a conference call reporting the earnings and results from the first quarter of 2015. On that conference call, Defendant Mann stated in relevant part:

> The cost of that meter is only about what today would typically be reimbursed on most insurance programs.
>
> \*       \*       \*
>
> To minimize any such risk, the label approved by the agency alerts prescribers with a boxed warning not to use this therapy in patients with COPD or serious asthma. That is a simple test, but although primary care physicians generally have spirometer instruments, very few diabetologists and only about 30% of endocrinologist do. Arrangements for spirometering and all other requirements in this leading therapy takes considerable time and those pose obstacles delaying initiation of therapy.
>
> Sanofi's equipment supply organization is working on overcoming the testing obstacle and we at MannKind are investigating a possible different solution. We have found an improved very inexpensive nonrecording spirometering instrument that meets the standard of the American Thoracic Society. We are evaluating a possible plan on which a doctor would purchase a device and [indiscernible] the patient.
>
> The cost of that meter is only about what today would typically be reimbursed on most insurance programs. It requires spirometering management will be informed by the patient with that instrument under the new provision of [indiscernible].
>
> Hopefully, this will offer another approach to satisfying the regulatory requirements.

22.     On the same call, Defendant Edstrom stated in relevant part:

> ***It is very clear, reviewing the reasons for the current sales value that is larger due to*** some administrative issues encountered during the launch of Afrezza, doctor appointment, ***Spirometer scheduling***, the 10

Class Action Complaint for Violation of the Federal Securities Laws

day patient sample use, doctor follow up [indiscernible] and managed care prior authorization processes have initially slowed down the penetration of Afrezza.

*Endocrinologists, being the initial primary target physician do not have that spirometers in thus they are forced to locate the pulmonary testing lab where spirometer could take place. This fact also significantly delayed the patients 10 day sample trail process, which is required before they can get their first prescription.* And there has also been some delays in patients even getting an appointment with an endocrinologists, particularly if they were not a patient of that doctor earlier. The requirements of prior authorization in short PA from the managed care companies have significantly delayed and completed the prescription process. The PA process itself is administrative demanding and it takes time before one have backed from the managed care company with an approval, so a prescription can be written.

(Emphasis added).

## Defendants' Materially False and Misleading Statements During the Class Period

23.     The Class Period begins on August 10, 2015 when MannKind held a conference call to discuss the second quarter of 2015 earnings. During the conference call, Defendant Edstrom stated in relevant part:

*Sanofi has made excellent moves to address the spirometry requirements and our research shows that it's no longer a critical gating item.*

(Emphasis added).

24.     On November 9, 2015, MannKind held a conference call to discuss the third quarter of 2015 earnings. On the call Defendant Edstrom stated in relevant part:

*Certainly in terms of pulmonary function testing with the support of the sales reps and all the people from Sanofi, doctors know where to*

Class Action Complaint for Violation of the Federal Securities Laws

***turn in making that happen. So that there was initially a delay, but they know how to address that.*** The prior authorization and the dealing with the insurance companies is, I would say more cumbersome, and takes more time, and there is a greater risk that either the patients or the doctor kind of looses the patient to kind of wait for it to happen. So from that point of view, we believe that to be a bigger obstacle than just pulmonary function testing.

(Emphasis added).

25.    The statements referenced in ¶¶23-24 above were materially false and misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) contrary to Defendants' assurances, the mandated pulmonary testing or spirometry was still a significant issue impeding sales of Afrezza; and (2) as a result, Defendants' statements about MannKind's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis at all relevant times.

**THE TRUTH EMERGES**

26.    On January 5, 2016, MannKind issued a press release entitled "MannKind Corporation Announces Termination of License and Collaboration Agreement With Sanofi." The press release stated in relevant part:

VALENCIA, Calif., Jan. 05, 2016 (GLOBE NEWSWIRE) -- MannKind Corporation (Nasdaq:MNKD) (TASE:MNKD) today announced the termination of its license and collaboration agreement with sanofi-aventis U.S. LLC for the development and commercialization of Afrezza® (insulin human) Inhalation Powder. The parties will promptly commence transition discussions in order to effect a smooth and orderly transition in the development and commercialization of Afrezza from Sanofi to MannKind over the next 90 – 180 days. In any event, termination of the license agreement in its entirety will be effective no later than six months

from the effective date of Sanofi's notice of termination, or July 4, 2016.

MannKind is reviewing its strategic options for Afrezza as a result of the termination of the collaboration with Sanofi.

27.     Also on January 5, 2016, *Bloomberg* reported that Sanofi spokesman, Jack Cox, said in an emailed statement that Sanofi terminated the agreement with MannKind due to continued low level of prescriptions "despite our [Sanofi's] substantial efforts."

28.     *StreetInsider.com* reported that Sanofi spokesman, Jack Cox, further said in his January 5, 2016 emailed statement that prescription levels of Afrezza never even met "modest expectations."

29.     On this news, the Company's stock fell $0.70 per share or over 48% to close at $0.75 per share on January 5, 2015, damaging investors.

30.     On January 6, 2015, James Rufus Koren of the *LA Times*, wrote an article entitled "A rare stumble for biotech pioneer Alfred Mann." In the article, endocrinologist and early backer of Afrezza, Dr. Alan Marcus, stated that Afrezza was unsuccessful because of the FDA-mandated lung tests. Particularly since endocrinologists do not typically perform those tests, Dr. Marcus said that doctors had "no hands-on training with either lung testing equipment or with the Afrezza inhalers themselves."

31.     On this news, the Company's stock fell $0.02 per share or approximately 2.67% to close at $0.73 per share on January 6, 2015, damaging investors.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired MannKind securities traded on NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged

Class Action Complaint for Violation of the Federal Securities Laws

corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, MannKind securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by MannKind or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of MannKind;

Class Action Complaint for Violation of the Federal Securities Laws

- whether the Individual Defendants caused MannKind to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

- whether the prices of MannKind securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- MannKind securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on NASDAQ, and was covered by multiple analysts;

Class Action Complaint for Violation of the Federal Securities Laws

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold MannKind securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

41.     At all relevant times, the market for MannKind securities was an efficient market for the following reasons, among others:

42.     As a result of the foregoing, the market for MannKind securities promptly digested current information regarding MannKind from all publicly available sources and reflected such information in MannKind's stock price. Under these circumstances, all purchasers of MannKind securities during the Class Period suffered similar injury through their purchase of MannKind securities at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

43.     The "Safe Harbor" warnings accompanying MannKind's reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor. See 15 U.S.C. §78u-5(b)(2)(A).

44.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of MannKind who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against All Defendants

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase MannKind securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

47.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for MannKind securities in violation of Section 10(b) of the Exchange Act and Rule 10b-

5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of MannKind as specified herein.

49.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of MannKind value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about MannKind and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of MannKind securities during the Class Period.

50.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's business prospects and operations; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the

- 14 -

Class Action Complaint for Violation of the Federal Securities Laws

Company's management team, internal reports and other data and information about the Company's operations and business projects at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

51.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing MannKind's the financial risk of the shift in strategy from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' omissions and misstatements of the Company's business strategy throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of MannKind securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of MannKind securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired MannKind securities during the Class Period at artificially high prices and were or will be damaged thereby.

Class Action Complaint for Violation of the Federal Securities Laws

53.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the prospects of Afrezza, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their MannKind securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

54.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

56.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of MannKind within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the

1  decision-making of the Company, including the content and dissemination of the
2  various statements that Plaintiff contends are false and misleading. The Individual
3  Defendants were provided with or had unlimited access to copies of the Company's
4  reports, press releases, public filings and other statements alleged by Plaintiff to have
5  been misleading prior to and/or shortly after these statements were issued and had the
6  ability to prevent the issuance of the statements or to cause the statements to be
7  corrected.

8      59.   In particular, each of these Defendants had direct and supervisory
9  involvement in the day-to-day operations of the Company and, therefore, is presumed
10 to have had the power to control or influence the particular transactions giving rise to
11 the securities violations as alleged herein, and exercised the same.

12     60.   As set forth above, MannKind and the Individual Defendants each
13 violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and
14 omissions as alleged in this Complaint.

15     61.   By virtue of their positions as controlling persons, the Individual
16 Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and
17 proximate result of Defendants' wrongful conduct, Plaintiff and other members of the
18 Class suffered damages in connection with their purchases of the Company's
19 securities during the Class Period.

20     62.   This action was filed within two years of discovery of the fraud and
21 within five years of each Plaintiff's purchases of securities giving rise to the cause of
22 action.

23     **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

24     a.   Determining that this action is a proper class action, designating Plaintiff
25 as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the
26 Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

27     b.   Awarding compensatory damages in favor of Plaintiff and the other
28 Class members against all Defendants, jointly and severally, for all damages

Class Action Complaint for Violation of the Federal Securities Laws

sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: January 15, 2016                   Respectfully submitted,

                                          **THE ROSEN LAW FIRM, P.A.**

                                          /s/ Laurence M. Rosen
                                          Laurence M. Rosen, Esq. (SBN 219683)
                                          355 S. Grand Avenue, Suite 2450
                                          Los Angeles, CA 90071
                                          Telephone: (213) 785-2610
                                          Facsimile: (213) 226-4684
                                          Email: lrosen@rosenlegal.com

                                          Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws